FILED IN OPEN COURT

3.12.2025

CLERK, U. S. DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE, FLORIDA

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

UNITED STATES OF AMERICA

v.                                    CASE NO. 3:24-cr-62-MMH-SJH

DEYVIS HERNANDEZ

## PLEA AGREEMENT

Pursuant to Fed. R. Crim. P. 11(c), the United States of America, by

Sara C. Sweeney, Acting United States Attorney for the Middle District of

Florida, and the defendant, Deyvis Hernandez, and the attorney for the

defendant, Gary S. Shumard, Esquire, mutually agree as follows:

**A.    Particularized Terms**

1.    Counts Pleading To

The defendant shall enter a plea of guilty to Counts One and Five

of the Indictment.  Count One charges the defendant with conspiracy, in

violation of 18 U.S.C. § 371. Count Five charges the defendant with wire

fraud, in violation of 18 U.S.C. § 1343.

2.    Maximum Penalties

Count One carries a maximum sentence of five years

imprisonment, a fine of $250,000, or twice the gross gain or twice the gross

loss caused by the offense, whichever is greater, or both a term of

Defendant's Initials _DH_                          AF Approval _____

imprisonment and fine, a term of supervised release of not more than three years, and a special assessment of $100. A violation of the terms and conditions of supervised release carries a maximum sentence of up to two years of imprisonment, as well as the possibility of an additional term of supervised release.

With respect to certain offenses, the Court shall order the defendant to make restitution to any victim of the offenses or to the community.

Count Five carries a maximum sentence of up to 20 years imprisonment, a fine of up to $250,000, or twice the gross gain or twice the gross loss caused by the offense, whichever is greater, or both a term of imprisonment and a fine, a term of supervised release of up to three years, and a special assessment of $100. A violation of the terms and conditions of supervised release carries a maximum sentence of up to two years of imprisonment, as well as the possibility of an additional term of supervised release.

With respect to certain offenses, the Court shall order the defendant to make restitution to any victim of the offenses or to the community.

Defendant's Initials _____        2

The cumulative maximum penalties for Counts One and Five are a maximum sentence of up to 25 years imprisonment, a fine of up to $500,000, or twice the gross gain or twice the gross loss caused by the offenses, whichever is greater, or both a term of imprisonment and a fine, a term of supervised release of up to three years, and a special assessment of $200. A violation of the terms and conditions of supervised released carries a maximum sentence of up to four years if imprisonment, as well as the possibility of an additional term of supervised release.

With respect to certain offenses, the Court shall order the defendant to make restitution to any victim of the offenses or to the community.

3.    Elements of the Offenses

The defendant acknowledges understanding the nature and elements of the offenses with which defendant has been charged and to which defendant is pleading guilty.

**Count One: Conspiracy**

The elements of an offense in violation of Title 18, United States Code, Section 371 are:

Defendant's Initials _DH_                    3

| First: | two or more persons in some way agreed to try to accomplish a shared and unlawful plan; |
|---|---|
| Second: | the defendant knew the unlawful purpose of the plan and willfully joined in it; |
| Third: | during the conspiracy, one of the conspirators knowingly engaged in at least one overt act as described in the indictment; and |
| Fourth: | the overt act was committed at or about the time alleged and with the purpose of carrying out or accomplishing some object of the conspiracy. |

## Count Five: Wire Fraud

The elements of an offense in violation of Title 18, United States Code, Section 1343 are:

| First: | the defendant knowingly devised or participated in a scheme or artifice to defraud to obtain money or property by using false or fraudulent pretenses, representations, or promises; |
|---|---|
| Second: | the false pretenses, representations, or promises were about a material fact; |
| Third: | the defendant acted with intent to defraud; and |
| Fourth: | the defendant transmitted, or caused to be transmitted, by wire some communication in interstate commerce to help carry out the scheme to defraud. |

Defendant's Initials _DH_                4

4.     <u>Counts Dismissed</u>

At the time of sentencing, the remaining count(s) against the defendant, Counts Two, Three and Four will be dismissed pursuant to Fed. R. Crim. P. 11(c)(1)(A).  However, the defendant understands that the conduct giving rise to the charges set forth in Counts Two, Three and Four may be considered relevant conduct by the probation office and the court.

5.     <u>Restitution</u>

Pursuant to 18 U.S.C. §§ 3663(a)(3) and/or 3663A(a)(3), defendant agrees to make full restitution to the victims in the case.

6.     <u>Acceptance of Responsibility - Three Levels</u>

At the time of sentencing, and in the event that no adverse information is received suggesting such a recommendation to be unwarranted, the United States will recommend to the Court that the defendant receive a two-level downward adjustment for acceptance of responsibility, pursuant to USSG § 3E1.1(a).  The defendant understands that this recommendation or request is not binding on the Court, and if not accepted by the Court, the defendant will not be allowed to withdraw from the plea.

Further, at the time of sentencing, if the defendant's offense level prior to operation of subsection (a) is level 16 or greater, and if the defendant complies with the provisions of USSG § 3E1.1(b) and all terms of this Plea

Agreement, including but not limited to, the timely submission of the financial affidavit referenced in Paragraph B.5., the United States agrees to file a motion pursuant to USSG § 3E1.1(b) for a downward adjustment of one additional level. The defendant understands that the determination as to whether the defendant has qualified for a downward adjustment of a third level for acceptance of responsibility rests solely with the United States Attorney for the Middle District of Florida, and the defendant agrees that the defendant cannot and will not challenge that determination, whether by appeal, collateral attack, or otherwise. The defendant understands that this recommendation or request is not binding on the Court, and if not accepted by the Court, the defendant will not be allowed to withdraw from the plea.

     7.    <u>Forfeiture of Assets</u>

     The defendant agrees to forfeit to the United States immediately and voluntarily any and all assets and property, or portions thereof, subject to forfeiture, pursuant to 18 U.S.C. §§ 981(a)(1)(C) and 28 U.S.C. § 2461, whether in the possession or control of the United States, the defendant or defendant's nominees.

     The defendant agrees and consents to the forfeiture of these assets pursuant to any federal criminal, civil judicial or administrative forfeiture action. The defendant also agrees to waive all constitutional,

Defendant's Initials   _DH_        6

statutory and procedural challenges (including direct appeal, habeas corpus, or any other means) to any forfeiture carried out in accordance with this Plea Agreement on any grounds, including that the forfeiture described herein constitutes an excessive fine, was not properly noticed in the charging instrument, addressed by the Court at the time of the guilty plea, announced at sentencing, or incorporated into the judgment.

If the United States seeks the forfeiture of specific assets pursuant to Rule 32.2(b)(4), the defendant agrees that the preliminary order of forfeiture will satisfy the notice requirement and will be final as to the defendant at the time it is entered. In the event the forfeiture is omitted from the judgment, the defendant agrees that the forfeiture order may be incorporated into the written judgment at any time pursuant to Rule 36.

The defendant agrees to take all steps necessary to identify and locate all property subject to forfeiture and to transfer custody of such property to the United States before the defendant's sentencing. To that end, the defendant agrees to make a full and complete disclosure of all assets over which defendant exercises control directly or indirectly, including all assets held by nominees, to execute any documents requested by the United States to obtain from any other parties by lawful means any records of assets owned by the defendant, and to consent to the release of the defendant's tax returns for

Defendant's Initials  DH          7

the previous five years.  The defendant further agrees to be interviewed by the government, prior to and after sentencing, regarding such assets and their connection to criminal conduct.  The defendant further agrees to be polygraphed on the issue of assets, if it is deemed necessary by the United States.  The defendant agrees that Federal Rule of Criminal Procedure 11 and USSG § 1B1.8 will not protect from forfeiture assets disclosed by the defendant as part of the defendant's cooperation.

The defendant agrees to take all steps necessary to assist the government in obtaining clear title to the forfeitable assets before the defendant's sentencing.  In addition to providing full and complete information about forfeitable assets, these steps include, but are not limited to, the surrender of title, the signing of a consent decree of forfeiture, and signing of any other documents necessary to effectuate such transfers.

Forfeiture of the defendant's assets shall not be treated as satisfaction of any fine, restitution, cost of imprisonment, or any other penalty the Court may impose upon the defendant in addition to forfeiture.

The defendant agrees that, in the event the Court determines that the defendant has breached this section of the Plea Agreement, the defendant may be found ineligible for a reduction in the Guidelines calculation for

Defendant's Initials  DH                    8

acceptance of responsibility and substantial assistance, and may be eligible for an obstruction of justice enhancement.

The defendant agrees that the forfeiture provisions of this plea agreement are intended to, and will, survive the defendant, notwithstanding the abatement of any underlying criminal conviction after the execution of this agreement. The forfeitability of any particular property pursuant to this agreement shall be determined as if the defendant had survived, and that determination shall be binding upon defendant's heirs, successors and assigns until the agreed forfeiture, including any agreed forfeiture amount, is collected in full.

**B.      Standard Terms and Conditions**

1.      Restitution, Special Assessment and Fine

The defendant understands and agrees that the Court, in addition to or in lieu of any other penalty, <u>shall</u> order the defendant to make restitution to any victim of the offense(s), pursuant to 18 U.S.C. § 3663A, for all offenses described in 18 U.S.C. § 3663A(c)(1); and the Court may order the defendant to make restitution to any victim of the offense(s), pursuant to 18 U.S.C. § 3663, including restitution as to all counts charged, whether or not the defendant enters a plea of guilty to such counts, and whether or not such counts are dismissed pursuant to this agreement. The defendant further

Defendant's Initials _DH_                    9

understands that compliance with any restitution payment plan imposed by the Court in no way precludes the United States from simultaneously pursuing other statutory remedies for collecting restitution (28 U.S.C. § 3003(b)(2)), including, but not limited to, garnishment and execution, pursuant to the Mandatory Victims Restitution Act, in order to ensure that the defendant's restitution obligation is satisfied.

On each count to which a plea of guilty is entered, the Court shall impose a special assessment pursuant to 18 U.S.C. § 3013. To ensure that this obligation is satisfied, the Defendant agrees to deliver a cashier's check, certified check, or money order to the Clerk of the Court in the amount of $200, payable to "Clerk, U.S. District Court" within ten days of the change of plea hearing. The defendant understands that this agreement imposes no limitation as to fine.

    2.   <u>Supervised Release</u>

The defendant understands that the offense(s) to which the defendant is pleading provide(s) for imposition of a term of supervised release upon release from imprisonment, and that, if the defendant should violate the conditions of release, the defendant would be subject to a further term of imprisonment.

Defendant's Initials _DH_        10

3.    <u>Immigration Consequences of Pleading Guilty</u>

The defendant has been advised and understands that, upon conviction, a defendant who is not a United States citizen may be removed from the United States, denied citizenship, and denied admission to the United States in the future.

4.    <u>Sentencing Information</u>

The United States reserves its right and obligation to report to the Court and the United States Probation Office all information concerning the background, character, and conduct of the defendant, to provide relevant factual information, including the totality of the defendant's criminal activities, if any, not limited to the count(s) to which defendant pleads, to respond to comments made by the defendant or defendant's counsel, and to correct any misstatements or inaccuracies. The United States further reserves its right to make any recommendations it deems appropriate regarding the disposition of this case, subject to any limitations set forth herein, if any.

5.    <u>Financial Disclosures</u>

Pursuant to 18 U.S.C. § 3664(d)(3) and Fed. R. Crim. P. 32(d)(2)(A)(ii), the defendant agrees to complete and submit to the United States Attorney's Office within 30 days of execution of this agreement an affidavit reflecting the defendant's financial condition. The defendant

Defendant's Initials _DH_                    11

promises that his financial statement and disclosures will be complete,

accurate and truthful and will include all assets in which he has any interest or

over which the defendant exercises control, directly or indirectly, including

those held by a spouse, dependent, nominee or other third party.  The

defendant further agrees to execute any documents requested by the United

States needed to obtain from any third parties any records of assets owned by

the defendant, directly or through a nominee, and, by the execution of this

Plea Agreement, consents to the release of the defendant's tax returns for the

previous five years.  The defendant similarly agrees and authorizes the United

States Attorney's Office to provide to, and obtain from, the United States

Probation Office, the financial affidavit, any of the defendant's federal, state,

and local tax returns, bank records and any other financial information

concerning the defendant, for the purpose of making any recommendations to

the Court and for collecting any assessments, fines, restitution, or forfeiture

ordered by the Court.  The defendant expressly authorizes the United States

Attorney's Office to obtain current credit reports in order to evaluate the

defendant's ability to satisfy any financial obligation imposed by the Court.

Defendant's Initials _DH_                    12

6.    <u>Sentencing Recommendations</u>

It is understood by the parties that the Court is neither a party to nor bound by this agreement.  The Court may accept or reject the agreement, or defer a decision until it has had an opportunity to consider the presentence report prepared by the United States Probation Office.  The defendant understands and acknowledges that, although the parties are permitted to make recommendations and present arguments to the Court, the sentence will be determined solely by the Court, with the assistance of the United States Probation Office.  Defendant further understands and acknowledges that any discussions between defendant or defendant's attorney and the attorney or other agents for the government regarding any recommendations by the government are not binding on the Court and that, should any recommendations be rejected, defendant will not be permitted to withdraw defendant's plea pursuant to this plea agreement.  The government expressly reserves the right to support and defend any decision that the Court may make with regard to the defendant's sentence, whether or not such decision is consistent with the government's recommendations contained herein.

7.    <u>Defendant's Waiver of Right to Appeal the Sentence</u>

The defendant agrees that this Court has jurisdiction and authority to impose any sentence up to the statutory maximum and expressly

Defendant's Initials _DH_                13

waives the right to appeal defendant's sentence on any ground, including the

ground that the Court erred in determining the applicable guidelines range

pursuant to the United States Sentencing Guidelines, except (a) the ground

that the sentence exceeds the defendant's applicable guidelines range <u>as</u>

<u>determined by the Court</u> pursuant to the United States Sentencing Guidelines;

(b) the ground that the sentence exceeds the statutory maximum penalty; or (c)

the ground that the sentence violates the Eighth Amendment to the

Constitution; provided, however, that if the government exercises its right to

appeal the sentence imposed, as authorized by 18 U.S.C. § 3742(b), then the

defendant is released from his waiver and may appeal the sentence as

authorized by 18 U.S.C. § 3742(a).

      8.   <u>Middle District of Florida Agreement</u>

      It is further understood that this agreement is limited to the

Office of the United States Attorney for the Middle District of Florida and

cannot bind other federal, state, or local prosecuting authorities, although this

office will bring defendant's cooperation, if any, to the attention of other

prosecuting officers or others, if requested.

Defendant's Initials __DH__       14

9.     Filing of Agreement

This agreement shall be presented to the Court, in open court or in camera, in whole or in part, upon a showing of good cause, and filed in this cause, at the time of defendant's entry of a plea of guilty pursuant hereto.

10.     Voluntariness

The defendant acknowledges that defendant is entering into this agreement and is pleading guilty freely and voluntarily without reliance upon any discussions between the attorney for the government and the defendant and defendant's attorney and without promise of benefit of any kind (other than the concessions contained herein), and without threats, force, intimidation, or coercion of any kind. The defendant further acknowledges defendant's understanding of the nature of the offense or offenses to which defendant is pleading guilty and the elements thereof, including the penalties provided by law, and defendant's complete satisfaction with the representation and advice received from defendant's undersigned counsel (if any). The defendant also understands that defendant has the right to plead not guilty or to persist in that plea if it has already been made, and that defendant has the right to be tried by a jury with the assistance of counsel, the right to confront and cross-examine the witnesses against defendant, the right against compulsory self-incrimination, and the right to compulsory process for the

Defendant's Initials _DH_                    15

attendance of witnesses to testify in defendant's defense; but, by pleading guilty, defendant waives or gives up those rights and there will be no trial. The defendant further understands that if defendant pleads guilty, the Court may ask defendant questions about the offense or offenses to which defendant pleaded, and if defendant answers those questions under oath, on the record, and in the presence of counsel (if any), defendant's answers may later be used against defendant in a prosecution for perjury or false statement. The defendant also understands that defendant will be adjudicated guilty of the offenses to which defendant has pleaded and, if any of such offenses are felonies, may thereby be deprived of certain rights, such as the right to vote, to hold public office, to serve on a jury, or to have possession of firearms.

     11.   <u>Factual Basis</u>

        Defendant is pleading guilty because defendant is in fact guilty. The defendant certifies that defendant does hereby admit that the facts set forth in the attached "Factual Basis," which is incorporated herein by reference, are true, and were this case to go to trial, the United States would be able to prove those specific facts and others beyond a reasonable doubt.

Defendant's Initials __DH__       16

12.    <u>Entire Agreement</u>

    This plea agreement constitutes the entire agreement between the

government and the defendant with respect to the aforementioned guilty plea

and no other promises, agreements, or representations exist or have been

made to the defendant or defendant's attorney with regard to such guilty plea.

13.    <u>Certification</u>

    The defendant and defendant's counsel certify that this plea

agreement has been read in its entirety by (or has been read to) the defendant

and that defendant fully understands its terms.

    DATED this _____ day of March, 2025.

SARA C. SWEENEY
Acting United States Attorney

_____
DEYVIS HERNANDEZ
Defendant

_____
KEVIN C. FREIN
Assistant United States Attorney

_____
GARY S. SHUMARD, ESQ.
Attorney for Defendant

_____
MICHAEL COOLICAN
Assistant United States Attorney
Deputy Chief, Jacksonville Division

Defendant's Initials _____        17

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

UNITED STATES OF AMERICA

v.                                                    CASE NO. 3:24-cr-62-MMH-SJH

DEYVIS HERNANDEZ

PERSONALIZATION OF ELEMENTS

**Count One: Conspiracy**

1.      Do you admit that beginning on an unknown date, but not later
than in or about November 2020, and continuing through and including in or
about March 2022, in the Middle District of Florida, and elsewhere, that you,
along with other individuals to include Luis Edel Trujillo Pena, Deonelky
Tabares Cid, Isvaldo Guerra Perdoma, and Luis Ernesto Vigil Ochoa, agreed
to try to accomplish a shared and unlawful plan to include aggravated identity
theft, access device fraud, and wire fraud?

2.      Do you admit that you knew the unlawful purpose of the plan
and willfully joined in it?

Defendant's Initials _DH_                    18

3.    Do you admit that during the conspiracy, one of the conspirators knowingly engaged in at least one overt act as described in the indictment to include using or attempting to use counterfeit access devices to engage in fraudulent transactions?

4.    Do you admit the overt act was committed at or about the time alleged and with the purpose of carrying out or accomplishing some object of the conspiracy?

### Count Five: Wire Fraud

1.    Do you admit that beginning on an unknown date, but not later than in or about November 2020, and continuing through and including in or about March 2022, in the Middle District of Florida, and elsewhere, that you, along with other individuals to include Luis Edel Trujillo Pena, Deonelky Tabares Cid, Isvaldo Guerra Perdomo, and Luis Ernesto Vigil Ochoa knowingly devised and participated in a scheme and artifice to defraud to obtain money or property by means of materially false and fraudulent pretenses, representations, and promises?

2.    Do you admit that the false pretenses, representations, and promises were about a material fact?

3.    Do you admit that you acted with an intent to defraud?

Defendant's Initials __DH__            19

4.     Do you admit that you caused to be transmitted by wire some
communication in interstate commerce to help carry out the scheme to
defraud, that is, a fraudulent purchase of diesel fuel at a point of sale terminal
with a counterfeit access device on or about July 19, 2021, in the amount of
$100.00 involving the Navigator Credit Union account of V.A., ending in
6604?

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

UNITED STATES OF AMERICA

v.                                          CASE NO. 3:24-cr-62-MMH-SJH

DEYVIS HERNANDEZ

FACTUAL BASIS

In November 2020, Gate gas stations (Gate) began to experience a significant increase in chargebacks involving fraudulent credit card purchases of diesel fuel. Gate reported the fraud to law enforcement. Initial investigation by law enforcement identified two primary vehicles involved with the fraudulent purchases of diesel fuel: 1) a black VW Jetta (black VW) and 2) a white VW Jetta (white VW). Based on information associated with the two Jettas and other investigative work law enforcement identified the driver of the white VW as Isvaldo Guerra Perdomo (Perdomo) and the driver of the black VW as Deonelky Tabares Cid (Cid). Law enforcement eventually identified other individuals involved in the scheme to steal diesel fuel to include Luis Edel Trujillo Pena (Pena), Deyvis Hernandez (Hernandez) and Luis Ernesto Vigil Ochoa (Ochoa). The Jacksonville Sheriff's Office (JSO) with the support of the U.S. Secret Service obtained tracker warrants for the two VWs in March 2021. Law enforcement subsequently obtained tracker warrants for additional

Defendant's Initials _DH_

vehicles involved in the theft of diesel fuel. Through the analysis of fuel
purchases, tracker warrant data, review of gas station video surveillance and
real time surveillance of subjects by various agencies law enforcement
determined that beginning on an unknown date, but not later than in or about
November 2020, and continuing through approximately March 2022, the
individuals were involved with a conspiracy to fraudulently purchase diesel
fuel, using counterfeit access devices.

As part of the conspiracy, Pena and on at least one occasion with the
assistance of Ochoa installed skimmers on gas pumps to include at gas stations
in Alabama, Louisiana and Northern Florida, including the Florida
Panhandle. Pena used the skimmers to illegally read and store information
such as credit or debit card account numbers and the corresponding customer
information involved with the legitimate purchase of gas. The account
numbers and customer information came from the magnetic strip on credit or
debit cards used by genuine individuals to purchase gas, using the point of sale
(POS) terminal on gas pumps. Pena would then download the stolen
information, using Bluetooth technology or by retrieving the skimmer and
downloading the information from it. After downloading the stolen
information, Pena created counterfeit access devices by using device-making
equipment. Pena used an encoder and a computer to transfer and place the

Defendant's Initials __P̶H̶__                    2

stolen account information and customer information on to thin plastic cards which contained a magnetic strip and were the size of a credit or debit card. After creating the counterfeit access devices, Pena distributed them to members of the conspiracy to include Cid, Perdomo, and Ochoa for purposes of primarily purchasing diesel fuel in furtherance of the conspiracy. As part of the conspiracy, Pena kept a portion of the counterfeit access devices for his own use involving the purchase of diesel fuel.

Vehicles driven by the conspirators contained a fuel bladder system that allowed the conspirators to fake pumping gas into the vehicle's gas tank when in fact the diesel fuel was being pumped into the fuel bladder system. Analysis of fuel purchases, tracker data, gas station video surveillance and/or real time surveillance of Cid, Perdomo, Ochoa and Pena determined that they would drive in separate vehicles to various gas stations located in among other areas, Duval, Nassau and St Johns County, FL. The gas stations included Gate, Wawa, Shell, Daily's, Exxon/Mobil, BP, Circle K, Chevron and Pilot. All of the gas stations maintained data centers outside of the state of Florida that assisted in processing purchases of fuel by customers using a credit or debit card at the POS terminal at the gas pump. Cid, Perdomo, Ochoa and Pena would swipe the plastic card created as part of the conspiracy through the POS terminal at the gas pump, knowing that the counterfeit access device contained

Defendant's Initials _DH_                    3

the stolen account information that belonged to a genuine person. When they
swiped the counterfeit access device through the POS terminal it sent an
electronic communication containing the stolen account information from
their location in the Middle District of Florida (MDFL) to a data center
outside of the state of Florida involved in processing on behalf of the gas
station the purchase of diesel fuel. The average amount of each fraudulent
purchase of diesel fuel was $100 with conspirators to include Cid, Perdomo,
Ochoa and Pena making multiple fraudulent purchases of diesel fuel a day and
being compensated for their participation in the conspiracy. Among other
fraudulent purchases of diesel fuel at a gas station in the MDFL made by a
conspirator using a counterfeit access device was on July 19, 2021, in the
amount of $100.00, the transaction involving the Navigator Credit Union
account of V.A. ending in 6604.

   After making fraudulent purchases of diesel fuel, the conspirators
initially drove to fuel yard #1 to offload the stolen diesel fuel. The conspirators
then changed locations and began offloading the stolen diesel fuel at fuel yard
#2. Through video and real time surveillance of fuel yard #2 by the FBI and
other agencies, law enforcement observed multiple 9500 gallon fuel tanker
trucks enter the fuel yard. The tanker trucks were then filled with the stolen
diesel fuel and left the fuel yard.

Defendant's Initials __DH__                    4

The tanker trucks were arranged in part by conspirator Hernandez who was part owner of a gas station in south Florida. As part of the conspiracy, Hernandez communicated with Pena about the purchase of the stolen diesel fuel involving the counterfeit access devices. Through this communication, Hernandez ensured the stolen fuel was loaded onto the tanker trucks. Hernandez coordinated drivers for the tanker trucks who would drive the stolen diesel fuel to locations designated by Hernandez to include in south Florida. Hernandez subsequently coordinated the sale of the stolen diesel fuel. Through communication to include with Pena, Hernandez compensated members of the conspiracy for their participation in the conspiracy. In total the conspirators fraudulently obtained approximately $171,475 of diesel fuel from various gas stations.